### Case No. 17,513.

In re WHIPPLE.

[2 Lowell, 404;[1] 11 N. B. R. 524.]

District Court, D. Massachusetts. March, 1875.

BANKRUPTCY — APPROVAL OF COMPOSITION — DUTY OF COURT.

1. In deciding whether a composition should be approved or rejected, it should be compared with what the creditors would receive through an assignee, not with what the debtor might possibly be able to pay them.

[Approved in Re Weber Furniture Co., Case No. 17,330.]

[Cited in Guild v. Butler, 122 Mass. 500.]

2. The act of congress puts upon the judge the responsibility of approving or rejecting a composition.

[Approved in Re Weber Furniture Co., Case No. 17,330.]

3. It cannot be assumed that any composition accepted by the required proportions of creditors is preferable to bankruptcy.

The bankrupt offered a composition of thirty-three and one-third per cent, which was accepted by more than the necessary proportion of creditors in number and value, but was opposed by a minority. The evidence tended to show that the assets consisted principally of two pieces of land, with the buildings, &c., one of which was the planing-mill, machinery, and fixtures, where the business of the debtor was carried on. In his list he valued this property at $12,000, subject to a mortgage for $2,000, and the other, which was a lot of land with four tenement houses, at $7,000. After deducting from the aggregate of debts those that were either secured or privileged, and from the assets all liens and privileges, there remained, according to the debtor's statement, assets of the value of $15,000 to pay debts of somewhat less than $33,000. The creditors insisted that the assets applicable to the unsecured debts were worth at least $19,000.

W. S. Gardner and G. W. Morse, for objecting creditors.

T. Weston, Jr., and N. Tebbetts, for bankrupt.

LOWELL, District Judge. Our system of ending bankruptcy by a composition has been borrowed from England, and theirs was borrowed from Scotland. In the latter country, the court was at one time required to pass upon the reasonableness of the offer of composition; but in England the action of the creditors is final, in the absence of fraud. I have looked at the decisions in the courts of both countries. They are well worth referring to, but are not numerous enough to have brought the subject up in all its possible aspects, or to enable us to reconcile some seeming contradictions in the dicta. In Scotland the disposition was strong to uphold, as reasonable, a composition that was fairly adopted; and in England, on the other hand, to set aside as fraudulent one that was decidedly unreasonable. See Smith v. Robertson, 8 Ct. Sess. Cas. 1055, affirmed in the lords, 2 Dow. & C. 312; Kilpatrick v. Wighton, 5 Ct. Sess. Cas. 895; Ex parte Williams, L. R. 10 Eq. 57; Ex parte Cowen, 2 Ch. App. 563; Hart v. Smith, L. R. 4 Q. B. 61; Ex parte Linsley, 9 Ch. App. 290.

It will not be possible to lay down many

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

general rules. But one that I have heretofore announced I adhere to, that the judge must make his comparison, not with what the debtor might possibly have done, but rather with what assignees in bankruptcy could do. The elements of this comparison must vary with the amount of debts, the amount and character of the assets, the nature of the business that is to be wound up, and many other circumstances. How far congress intended to protect creditors against each other, and how far the court is to inquire into motives, are questions of no little difficulty. Some creditors may vote for the resolution without much inquiry, from a general and not altogether unfounded idea, that bankruptcy is to be avoided at all risks; some out of kindness to the debtor; some from a conviction that the offer is for their own interest, as distinguished from the general interest. What is the court to do? How far to go in upholding or in setting aside?

I am of opinion, upon the whole, that congress has put upon me the difficult and delicate responsibility of rejecting a composition, even if opposed by a small minority of creditors, when it is made to appear that a settlement in bankruptcy would be more for their advantage. It may be said that these summary settlements are made for the very purpose of enabling the debtor to resume his business; and that as the composition must be paid from the assets of the debtor, some allowance must be made from the apparent value of the assets to enable him to convert them. These considerations have force; but, as I said in another case, there is always a margn in favor of a debtor who settles his own affairs, for he can realize more than any assignee could do; and by making my comparison of the offer with the probable dividend in bankruptcy, I do, in fact, leave something in his hands for both the purposes referred to. In the case I have mentioned, I intimated an opinion that a difference of five per cent upon the amount of the debts in that case, which was small, would not be sufficient to induce me to reject the resolution.

It cannot be admitted by the courts, and is not the fact in this district, nor, I suppose, in any, that a compromise, however inadequate to the debtor's means, is better than bankruptcy. In this case, from the very simple character of the business to be wound up, the whole could be settled in two months, and at an expense, as the register informs me, of not more than $500, including the charges of auctioneer and assignee.

The evidence of the experts, given upon the basis of a forced sale of the property for cash, satisfies me that the net assets applicable to the payment of the unsecured debts are at least $18,000, of which the debtor offers to divide something under $11,000, and retain something over $7,000. This is a more convenient and intelligible mode of stating the matter than by proportions; for if the whole amount of debts was small, a loss of a large per centage might be but a small sum of money, which would be absorbed in expenses.

Taking the precise facts of this case, I think an offer which leaves so large an amount in the debtor's hands ought not to be imposed even upon a small minority of the creditors. Motion to record the resolution denied.

The debtor was afterwards permitted to make a better offer, which was accepted. It is not the practice to allow a second offer to be made, without good reasons; and such were given in this case.